IN THE SUPREME COURT OF THE STATE OF DELAWARE

EQUITY TRUST COMPANY, §
§ No. 172, 2018
    Plaintiff Below, §
    Appellant, § Court Below: Superior Court
§ of the State of Delaware
    v. §
§
INTERACTIVE BROKERS LLC, § C.A. No. N17C-05-252 WCC[CCLD]
§
    Defendant Below, §
    Appellee. §

Submitted: October 24, 2018
Decided: October 26, 2018

Before **STRINE**, Chief Justice; **VAUGHN** and **SEITZ**, Justices.

## **O R D E R**

This 26th day of October 2018, it appears to the Court that:

(1) Under a service agreement between the parties, Equity Trust provided trust and related services to Interactive Brokers' customers in connection with the customers' retirement plans. Section 9 of this agreement provided for automatic renewal on the first day of the next year unless either party gave sixty days' notice that it would terminate the agreement. In October 2016, Interactive Brokers gave notice under Section 9 that it would not renew the agreement for 2017.

(2) Equity Trust alleges Interactive Brokers' choice to not renew the agreement triggered closing fees that Interactive Brokers has refused to pay. Equity

Trust claims the fees are owed under Section 2(k) of the service agreement. The amount of these fees is set forth in Exhibit B of the agreement, which provides for both a "Closing Fee" and a "Bulk Closing Fee."[1]

(3)     Based upon Interactive Brokers' refusal to pay these fees, Equity Trust brought a claim for breach of contract. The court below granted Interactive Brokers' motion to dismiss, holding that the contract provided the parties with a non-renewal option and exercising that option did not trigger any closing fees.[2] Equity Trust appeals from that decision. We review motions to dismiss *de novo*.[3]

(4)     The Superior Court correctly rejected Equity Trust's argument that declining to renew the agreement prompted the payment of fees. The agreement shows that the obligation to pay closing fees is triggered not when the entire agreement is terminated, but rather when individual accounts are closed. Section 2(k), which is the basis for the alleged breach, requires Interactive Brokers to "[p]ay all [Equity Trust] fees for Accounts closed during a calendar quarter and all quarterly trustee fees for all open Accounts."[4] Thus, closing fees are payable only on the closing of "Accounts." "Accounts" are in turn defined as "retirement plan accounts

---

[1] App. to Opening Br. at A037 (Amended Fee Schedule). The Closing Fee is $20.00 per account and is also referred to as the "Non-Bulk Closing Fee." The Bulk Closing Fee of $40.00 applies if more than 20% of the account based is terminated during any one-year period of the agreement.
[2] *Equity Tr. Co. v. Interactive Brokers LLC*, 2018 WL 1216082, at *4 (Del. Super. Ct. Mar. 6, 2018).
[3] *Ramirez v. Murdick*, 948 A.2d 395, 399 (Del. 2008).
[4] App. to Opening Br. at A023 (Service Agreement § 4(k)).

established by Customers," with "Customers" defined as Interactive Brokers' customers.[5] Therefore, "Account" means an individual retirement plan account; that is, an account that an Interactive Brokers customer has with Interactive Brokers. Customers do not have "Accounts" with Equity Trust, which is only the trustee of the retirement plans. That means that the obligation to pay a closing fee is triggered only when an Interactive Brokers customer's account is closed.

(5) At no point in the complaint does Equity Trust plead facts supporting a rational inference that all the "Accounts" were closed. In fact, the complaint alleges that Interactive Brokers merely "assumed control of the Accounts," "removed Equity Trust's name from the Accounts," and substituted itself "as trustee for the Accounts."[6] Those statements imply that Interactive Brokers did not close the Accounts, but instead just replaced Equity Trust as trustee once the agreement expired.

(6) If Equity Trust wanted the non-renewal of the agreement to result in automatic Bulk Closing Fees, then it should have negotiated for a non-renewal to have that effect by operation of the agreement's express terms. The easy way to do that would have been to provide that a non-renewal under Section 9 would be deemed to have the same effect as closing all the Accounts under Section 2(k),

---

[5] *Id.* at A021.
[6] *Id.* at A016 (Compl. ¶¶ 31, 33).

thereby requiring payment of Closing Fees and Bulk Closing Fees. But, Section 9 never cross-references to Section 2(k) at all, much less suggest that exercising the termination option would have the consequence of exposing Interactive Brokers to Closing Fees or Bulk Closing Fees under Section 2(k).[7] Put simply, neither Section 9, Section 2(k), nor the Amended Fee Schedule makes any connection between the non-renewal of the agreement and any fee owed for that action. Therefore, the Superior Court correctly granted Interactive Brokers' motion to dismiss.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[7] Section 9 of the agreement provides for an initial non-cancelable term through 2001 and then automatic renewal "for additional one-year periods effective January 1st unless either party, upon at least sixty (60) days' written notice prior to the renewal date, terminates the Agreement." App. to Opening Br. at A026 (Service Agreement).